419 P.2d 211

**Eugene DARRAR, Plaintiff-Appellant,**

v.

**M. L. JOSEPH and Maybelle Joseph, his wife, Defendants-Respondents.**

**No. 9742.**

Supreme Court of Idaho.

Sept. 21, 1966.

Rehearing Denied Oct. 18, 1966.

J. H. Felton, Lewiston, for appellant.

McFadden & Park, St. Maries, for respondents.

J. Ward Arney, Coeur d'Alene, amicus curiae.

TAYLOR, Justice.

On or about October 15, 1962, plaintiff (appellant) entered into an option contract with the defendants (respondents) for the

sále by plaintiff to defendants of certain real property (the Meadowhurst tract) for the sum of $13,000, of which $11,000 was to be paid in cash, and $2,000 was to be paid by the hauling of rock to the Star Lumber Company millsite at Plummer, Idaho, at $1.50 per yard. Defendants were required to pay plaintiff $500 per month on the purchase price until the transaction was consummated and the title free and clear of encumbrances was given by plaintiff. Thereafter, plaintiff agreed to sell and defendants agreed to buy an additional tract of land lying between the St. Joe river and a dyke adjoining the south edge of the property described in the first agreement. The purchase of this second tract, referred to as the "adverse property," was conditioned upon plaintiff's ability to establish title thereto by adverse possession. The consideration for the sale of the "adverse property" was $7,000, payable $2,000 per year for two years, and $3,000 the third year, with interest thereon at 5% per annum.

Defendants entered into possession of the property and during the period from October 15, 1962, through March 10, 1963, paid on the purchase price thereof $1,875 cash and $2,000 by the hauling of rock to the Star Lumber Company millsite. Defendants defaulted in the making of the $500 monthly payments and plaintiff brought this action for cancellation of the contract and for possession of the property.

In their answer, defendants alleged that their obligation to pay the purchase price did not mature until plaintiff had cleared his title to the property of numerous encumbrances existing thereon, as plaintiff had agreed; that they discontinued the making of payments because plaintiff was making no effort to clear his title, and that they doubted whether plaintiff could clear his title as agreed. Defendants prayed that the court require plaintiff to tender a policy of title insurance or abstract of title, showing merchantable title in him, and that defendants be allowed thirty days to pay the balance found due by the court, and that upon such payment, plaintiff be required to convey the property to defendants free and clear of all encumbrances.

After trial of the issues, the court found that the plaintiff was, and still is, unable to perform his contract because his title was not free and clear of encumbrances; that defendants were in default for failure to make payments provided for in the agreement; and that the parties' respective obligations were concurrent and reciprocal and neither had a cause of action to forfeit or rescind the contract, against the other, until ready, willing and able to perform;

"That specifically, Darrar, plaintiff and seller had not been in position to demand payment from Joseph, defendant and buyer, because of his failure to clear his title and furnish a correct description of the property included in the so called 'adverse property.' "

The court then decreed:

"That the seller, plaintiff, has a reasonable time to tender performance according to the terms of the option, including the furnishing of title free and clear of encumbrances preferably by abstract of title or title insurance except for taxes after the year 1962, * * *

"That on tender of performance, the buyer, defendant, must be able to perform according to the terms of the option within a reasonable time, if he (the buyer) is unable to perform, the option may be rescinded and the seller put in possession, that if seller is unable to make title conform to the option agreement within a reasonable time, buyer may elect to rescind or take the title available. In the event of a rescission by buyer, he shall be required to pay $66.67 a month for use and occupancy of the premises and the buyer is not entitled to repayment of expenditures for improvements.

"That the seller does not have to provide a survey or an abstract or title

policy but the seller must show the buyer the lines of the property and to tender performance according [to] the terms of the option by furnishing of title free and clear of encumbrances preferably by abstract of title or title insurance. ·* *

"That said Court may enter further orders to carry out the terms of this judgment and decree."

The decree was dated July 24th and filed July 28, 1964, and no appeal was taken therefrom.

In November, 1964, plaintiff caused to be issued a "writ of possession with execution for money judgment." By this instrument plaintiff asserted that he had deposited in the clerk's office, September 18, 1964, an abstract showing title to the property in him, and that defendants had failed to perform and had refused to take the title available. In response, defendants filed a motion for deed; and an affidavit in which they allege that plaintiff had not tendered title free and clear of encumbrances; that they had theretofore notified plaintiff of their election to take the title available, as authorized by the decree; that there were recorded liens and encumbrances upon the property totaling approximately $10,500, and that they were presently able to pay the plaintiff the full purchase price, less the existing encumbrances; and prayed that plaintiff be required to deliver a warranty deed, as required by the option agreement and the judgment of the court.

March 8, 1965, a hearing was had upon these conflicting demands of the parties. At that time the court gave defendants until noon, June 8, 1965, to tender performance in accordance with the terms of the original option agreement, and required plaintiff, upon such tender, to perform the agreement on his part.

June 8, 1965, the parties met at a bank in the county seat. There, defendants tendered payment of what they claimed was the full balance due on the contract, which offer included the satisfaction of a judgment lien upon the land. The offer was rejected by plaintiff on the ground that it was insufficient.

A further hearing was had on June 17, 1965, when the court determined that defendants' tender of June 8th was sufficient to satisfy the contract and the court's decree. The court then determined the amount due from defendants to plaintiff and ordered:

"That defendants shall deposit with the undersigned District Judge, at his chambers in Moscow, Idaho, on or before 12:00 o'clock noon, Tuesday, June 22, 1965, a certified check or money order in the amount of $11,102.49, notes in the principal amount of $5,125, and mortgage, all as more fully set forth in Conclusions of Law above.

"* * * that plaintiff shall deposit with the undersigned District Judge, at his chambers in Moscow, Idaho, on or before 12:00 noon, on Tuesday, June 22, 1965, his warranty deed conveying the property described in the foregoing Conclusions of Law, free and clear of all lien and encumbrances except taxes for the year 1963 and subsequent years."

This order was dated July 26th and filed July 27, 1965.

Defendants complied with the order of July 26th by depositing with the court the $11,102.49, and three notes aggregating the principal amount of $5,125, payable over a period of three years, with interest at 5% per annum, and a mortgage on the so-called adverse property, as security for the payment of the notes. Plaintiff refused to accept the money, promissory notes, and mortgage, claiming that the tender was insufficient, and that the court should have required defendants to pay in cash the full amount of the purchase price, or that the mortgage for the unpaid balance should have covered all of the property. Plaintiff did not deposit a warranty deed as required, and brought this appeal from the order. After plaintiff's refusal to accept the tender, the court permitted defendants to withdraw the funds and notes and mortgage.

Plaintiff's assignments of error are as follows:

"I. The Court erred in attempting to make judicial and substantial changes in its decree after the decree had become final.

"II. The Court erred in making any new orders in this case after judgment for the reason that the only orders it was entitled to make were orders giving reasonable time and granting a writ of assistance when the reasonable time had expired.

"III. The Court erred in holding hearings without record and making orders without writing.

"IV. The Court erred in placing deposited funds in the hands of the District Judge and not in the hands of the County Treasurer and after appeal, returning the funds to the defendants."

The orders made by the court after its decree were not in variance of the decree or the contract, but were in accord therewith and were properly made to secure the rights of the parties in compliance with the decree and the contract. At some of the hearings had subsequent to judgment the court reporter was not present. But as to all, except the one of March 8, 1965, the court's proceedings were recorded in the minutes. The action taken March 8th was recited in a subsequent order of the court.

■ Proceedings of the district court should be recorded either in the minutes or the reporter's notes, whichever is appropriate to the nature of the proceedings had. I.C. §§ 1–101, 1–102, 9–310; Cuoio v. Koseris, 68 Idaho 483, 200 P.2d 359 (1948); First Nat. Bank of Pocatello v. Poling, 42 Idaho 636, 248 P. 19 (1926); 21 C.J.S. Courts § 226; 20 Am.Jur.2d, Courts, § 51. However, in this case plaintiff has not claimed or shown he was prejudiced by any irregularity in that regard.

■ Likewise, plaintiff has shown no prejudice arising out of the order of the court requiring the deposit to be made with the judge, rather than with the clerk, or by failure of the clerk to deposit the money with the county treasurer, as required by I.C. § 8–702. By refusal to accept the tender, and permitting it to be withdrawn, plaintiff showed that he had no interest in the manner in which the tender was handled.

■ Plaintiff contends that the withdrawal of the tender, with the permission of the court, rendered the tender void and established in plaintiff the right to forfeit the contract of sale and to repossess the property.

"An offer in writing to pay a particular sum of money, or to deliver a written instrument or specific personal property, is, if not accepted, equivalent to the actual production and tender of the money, instrument or property." I.C. § 9–1501.

Defendants, in their answer and counterclaim, filed in the original action, offered to perform their agreement as to both parcels of property, and alleged they were willing and able to do so upon plaintiff's compliance with his agreement as to title. This offer constituted a tender within the statute. In Machold v. Farnan, 20 Idaho 80, at 89, 117 P. 408, at 411 (1911), this court said:

"To stop the running of interest, it was not only necessary that plaintiff should tender the whole amount due, but if the money so tendered was not accepted, it was necessary for him to keep it on deposit subject to respondent's demand or to make a sufficient offer in writing to avoid the necessity of keeping it on deposit. Appellant did neither, as there was no tender in writing in the amended complaint. After plaintiff deposited the money, he withdrew it and did not leave in lieu thereof any offer in writing to pay it. The respondent was then left without the money and without a written tender."

Such language would indicate that where an offer in writing is made, an actual tender of the money or instrument need not be made or maintained. See also, Green v.

Duvergey, 146 Cal. 379, 80 P. 234 (1905). In this case, defendants made an offer in writing, and that offer was recognized in the court's decree and the order of July 26th, and remains available to the plaintiff for the protection of his rights under the contract.

Order affirmed.

Costs to respondents.

McFADDEN, C. J., McQUADE and SMITH, JJ., and TOWLES, D. J., concur.

## ON DENIAL OF PETITION FOR REHEARING

TAYLOR, Justice.

Plaintiff-appellant has filed a petition for rehearing in which he asserts that this court has affirmed an order of the district court which is impossible of performance. He points out that the order dated July 26, 1965, required plaintiff to perform certain acts on or before June 22, 1965. The fact is—as the record shows and as plaintiff's counsel well knows—the order dated July 26, 1965, was made at the close of the hearing had on June 17, 1965, and was reduced to writing by the court July 26, 1965, after plaintiff's request for the entry of a formal order from which an appeal could be taken, and after plaintiff's counsel had neglected or declined to prepare and submit such an order for the court's approval.

Plaintiff's further contention that the decision herein leaves him without either the property or payment therefor, is without merit. Any further orders necessary to the enforcement of the court's judgment and the order appealed from, or other disposition of the cause as present circumstances or facts may require, will be made by the district court, after remittitur herein.

Petition denied.

McFADDEN, C. J., McQUADE and SMITH, JJ., and TOWLES, District Judge, concur.